IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARY MOLINA,                          §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §        Civil Action No. 3:15-CV-00757-N
                                      §
CALIBER HOME LOANS INC, *et al*.,     §
                                      §
        Defendants.                   §

## ORDER

This Order addresses Defendant Caliber Home Loans, Inc. ("Caliber") and U.S. Bank Trust, N.A., as Trustee for VOLT Asset Holdings Trust XVI's ("U.S. Bank Trust") (collectively, "Caliber Defendants") amended Rule 12(c) motion for judgment on the pleadings [24] and HSBC Mortgage Service, Inc. ("HSBC"), Beneficial Financial I, Inc. ("Beneficial"), and Household Finance Corporation III's ("Household") (collectively, "HSBC Defendants") motion to dismiss [27]. The Court grants the motions in part and denies them in part.

## I. THE ORIGIN OF THE MOTIONS

This case arises from an agreement to enter into a deed in lieu of foreclosure ("DIL") between Molina and the HSBC Defendants on or about February 11, 2010. *See* Am. Compl. ¶10 [16]. Molina borrowed funds in 2004 from Ameriquest Mortgage Company and secured the loan with a mortgage against real property located in Garland, Texas (the "Property"). One or more of the HSBC Defendants subsequently received the mortgage. On May 3, 2006,

Plaintiff deeded to her husband an undivided one-half (½) interest in and to the Property. Molina alleges title to the Property was transferred back to her pursuant to a decree of annulment of the marriage signed on March 13, 2007.  *See id.* ¶8.  By 2009, Molina could no longer make her mortgage payments.  Molina alleges the HSBC Defendants made numerous collection calls and sent other correspondence to Molina in an attempt to collect the debt.  *See id.* ¶9.  At this time, the parties agreed to execute the DIL, transferring ownership of the property to the HSBC Defendants.  Molina further alleges that as part of the DIL agreement, the HSBC Defendants agreed that the DIL would also extinguish the underlying debt.[1] *See id.* ¶9–10, 15.  The parties allegedly filed and recorded the DIL in the Dallas County property records on March 8, 2010.  *See id.* ¶11.  On or about March 5, 2010, the HSBC Defendants took possession of the Property, placed a safeguard lock on the front door, and monitored access to the Property.  *See id.* ¶13.  On or before June 20, 2010, the HSBC Defendants requested cancellation of lender-placed insurance on the Property with an effective date of August 4, 2010.  *See id.* ¶14.

After the parties executed and filed the DIL, the HSBC Defendants continued to make collection calls and send correspondence demanding payments on the underlying note.  After explaining to the HSBC Defendants that she owed nothing by virtue of the DIL, Molina alleges that the representatives assured her that collection efforts would cease once they updated their system.  *See id.* ¶16.  Molina sent a letter to the HSBC Defendants asking for

---

[1]Defendants argue that Molina's transfer of an interest in the Property to her husband prevented the DIL from extinguishing the debt.  While the Court acknowledges that argument, it must accept as true the allegations on the face of the pleadings.

ORDER – PAGE 2

communication to cease, which the HSBC Defendants received on August 17, 2011.  *See id.* ¶17.  In the HSBC Defendants' responsive letter dated August 26, 2011, they indicated that HSBC approved the DIL and agreed to provide relocation funds, but that because they had received no payments on the account since October 2009, the account was delinquent and being handled by the Loss Mitigation Department.  *See id.* ¶17–18.  The HSBC Defendants stated that Molina was contractually liable for the debt.  *See id.* ¶18.  The letter further indicated that HSBC updated its records to cease telephone communication with Molina.  *See id.* ¶19.

On December 12, 2012, HSBC sent a letter to Molina indicating that she owed $141,212.73.  *See id.* ¶21.  On April 5, 2013, HSBC sent Molina a Notice of Default and Intent to Accelerate her Texas Nonrecourse Loan, which indicated that $62,283.47 was past due and that they would accelerate the loan if not paid in full within 30 days.  *See id.* ¶22.

The HSBC Defendants assigned the note to the Caliber Defendants for collection in 2013.  *See id.* ¶23.  Caliber allegedly launched a "threatening and coercive" collection campaign, sending correspondence and making phone calls to Molina.  *Id.* ¶24.  After informing Caliber orally and in writing that she did not owe the debt, Caliber allegedly sent copies of another borrower's loan documents, but never sent anything to evidence that Molina owed the debt at issue.  *See id.*

Molina alleges that Caliber suggested she "short sell" the property, and assisted her in attempting to do so, but that two real estate agents told her she could be jailed because the Property was not hers.  *See id.* ¶26.  Caliber allegedly continued to call Molina about the debt

and threatened her with a foreclosure action.  On February 2, 2014, Molina complained to the Consumer Financial Protection Bureau ("CFPB"), which responded by stating that it reached out to Caliber to determine whether Caliber completed Molina's DIL and updated her credit report accordingly, and that Caliber reported that it had.  *See id*. ¶28.

On November 25, 2014, U.S. Bank Trust attempted to foreclose on the Property by filing an Application for Expedited Order under Rule 736 on a Home Equity or Home Equity Line of Credit Loan.  *See id*. ¶29.  Molina was unaware of the action until U.S. Bank Trust obtained a default judgment on January 16, 2015.  *See id*.

In her Amended Complaint, Molina brings claims against the Caliber Defendants for violations of the Texas Debt Collection Act ("TDCA"), the Fair Debt Collection Practices Act ("FDCPA"), the Texas Deceptive Trade Practices Act ("DTPA"), and the Telephone Consumer Protection Act ("TCPA"), and against the HSBC Defendants for breach of contract and for violation of the TDCA, the DTPA, and the TCPA.  The Caliber Defendants and the HSBC Defendants now move to dismiss Molina's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and 12(c), respectively.  Molina opposes the motion and, in the alternative, seeks leave to amend.

## II. THE RULE 12 STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and

may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. Rule 12(c) Motion for Judgment on the Pleadings

Federal Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The standard for deciding a Rule 12(c) motion is the same as that employed in deciding a Rule 12(b)(6) motion. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002).

### III. THE COURT GRANTS CALIBER'S MOTION FOR
### JUDGMENT ON THE PLEADINGS IN PART

Upon review of the Amended Complaint and the relevant legal authorities, the Court determines that Molina has stated certain claims for relief under the TDCA, the FDCPA, and the TCPA, but that Molina is not a consumer under the DTPA. Accordingly, the Court grants the motion for judgment on the pleadings in part and denies it in part.

### A. Violation of the TDCA

*1. Section 392.301(a)(3).* – This section prohibits debt collectors from "representing or threatening to represent to any person other than the consumer that a consumer is willfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute." TEX. FIN. CODE § 392.301(a)(3). Molina pleads that she informed Caliber orally and in writing that she did not owe the debt, but that as of January 2014, her Experian credit report indicated that the status of her debt was "Creditor received deed" and that she had a balance of $125,735. *See* Am. Compl. 7, 12 [16]. Molina argues that by stating that she owed $125,735 and not adding a statement that the amount was in dispute, Caliber represented that Molina was willfully refusing to pay an undisputed debt. *See* Pl.'s Resp. to Defs.' Am. 12(c) Mot. for J. 3 [26].

The Caliber Defendants argue that Molina does not identify any specific threats, coercion, or attempts to coerce, or identify how reporting the account as "Creditor received deed" represented that Molina willfully refused to pay a nondisputed debt. *See* Br. in Supp. of Defs.' Am. 12(c) Mot. for J. 7 [25]. The statute contemplates that the actions laid out in

section 392.301(a)(3) are in themselves prohibited threats, coercions, or attempts to coerce; Molina need not separately plead specific threats, coercion, or attempts to coerce.[2]  Because the statute requires only a representation that a consumer is willfully refusing to pay an undisputed debt, Molina's allegation that Caliber's report read as a whole creates such a representation is sufficient to state a claim for relief that is plausible on its face.

   *2. Section 392.301(a)(7).* – This section prohibits debt collectors from "threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings."  TEX. FIN. CODE § 392.301(a)(7). Molina pleads that the Caliber Defendants maintained a safeguard lock on the front door of the Property and that Defendants told her she could only regain access to the house by paying her outstanding debt.  *See* Am. Compl. 12–13 [16].  The Court agrees with the Caliber Defendants that because Molina pleads the DIL was valid and that the debt should have been extinguished, Caliber's maintaining locks on the front door would be consistent with a transfer of ownership.  Accordingly, the Court dismisses Molina's section 392.301(a)(7) claim.

   *3. Section 392.301(a)(8).* – This section prohibits debt collectors from "threatening to take an action prohibited by law."  TEX. FIN. CODE § 392.301(a)(8).  Molina pleads that

--------

[2]Section 392.301(a) reads: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices . . ." TEX. FIN. CODE § 392.301(a).  The statute then proceeds to recite examples of threatening or coercive practices that debt collectors may not engage in.  As such, if a debt collector engages in any of the listed practices, it has inherently engaged in a practice that is threatening or coercive under the statute.

the Caliber Defendants violated this section by threatening to foreclose on the Property after the DIL had already deeded the Property to the HSBC Defendants.  The Caliber Defendants argue that Molina's allegations are conclusory, that Molina does not show that Defendants threatened or coerced the Plaintiff, and that Molina does not show that foreclosure was prohibited by law.  The statute contemplates that the actions laid out in section 392.301(a)(8) are in themselves prohibited threats, coercions, or attempts to coerce; Molina need not separately plead specific threats, coercion, or attempts to coerce.  Accepting as true Molina's assertion that the DIL was in fact valid and extinguished the debt,[3] foreclosure by the Caliber Defendants would be prohibited.  Accordingly, Molina has pled a claim to relief under section 392.301(a)(8) that is plausible on its face.

   *4. Section 392.302(4).* – This section prohibits debt collectors from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."  TEX. FIN. CODE § 392.302(4). Molina pleads that Defendants made one or more debt collection calls per day several times per month, and that per information and belief, the Caliber Defendants made the calls with the intent to harass her into paying the debt.  *See* Am. Compl. 13 [16].  The Caliber Defendants argue that Molina has not alleged specifics regarding the date, time, or frequency of the calls, and that courts generally require a great volume of phone calls and extenuating circumstances.  *See* Br. in Supp. of Defs.' Am. 12(c) Mot. for J. 9 [25].  Molina pleads that the Caliber Defendants made repeated telephone calls with the intent to harass her.  Per Rule

---

   [3]*See supra* note 1.

ORDER – PAGE 9

9(b) of the Federal Rules of Civil Procedure, Molina need only allege this intent generally. *See* FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")  Accordingly, Molina has pled a claim to relief under section 392.302(4) that is plausible on its face.

  ***5. Section 392.303(a)(2).*** – This section prohibits debt collectors from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless . . . expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2).  Molina alleges that the Caliber Defendants attempted to collect $35,170.41 from Molina in accrued interest through July 18, 2013, $20,393.66 in fees and costs, and $5,692.84 for "Escrow/Unapplied." Molina asserts that the Caliber Defendants were not entitled to charge these interests and fees because the note had been extinguished.  The Caliber Defendants argue that Molina fails to allege that Defendants used "unfair or unconscionable" means to collect interest and fees, or that the interest and fees were not authorized.  The statute contemplates that the actions laid out in section 392.303(a)(2) are in themselves unfair or unconscionable; Molina need not separately plead unfair or unconscionable means.  The relevant question under section 392.303(a)(2) is whether mortgage servicers are attempting to assess fees not authorized by the deed of trust. *See Fields v. JP Morgan Chase Bank, N.A.*, 638 Fed. Appx. 310, 313 (5th Cir. 2016).  Molina pleads that the interest and fees were not authorized because the DIL extinguished the

ORDER – PAGE 10

underlying note.[4]  Accordingly, Molina has pled a claim to relief under section 392.303(a)(2) that is plausible on its face.

  ***6.  Section  392.304(a)(8).*** – This section prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  TEX. FIN. CODE § 392.304(a)(8).  Molina argues that the Caliber Defendants filed a foreclosure action in the District Court of Dallas County, Texas, 134th Judicial District on November 25, 2014, where they misrepresented that Molina was in default on the note, that Molina had not made at least sixty-six (66) regular monthly payments, and that the total amount to pay off the loan was $173,799.38.  *See* Am. Compl. 14 [16].  Citing *Miller v. BAC Home Loan Servicing, L.P.*, the Caliber Defendants argue that Molina must demonstrate that the Caliber Defendants led her to think differently with respect to the character, extent, or amount of her debt.  *See Miller*, 726 F.3d 717, 723 (5th Cir. 2013).  Because Molina was unaware of the foreclosure proceedings until U.S. Bank Trust obtained a default judgment against her, the Caliber Defendants argue that she has not stated a viable claim.  In *Miller*, the plaintiffs were always aware that they had a mortgage debt, of the specific amount of the debt, and that they had defaulted.  *See id*.  Thus,  a foreclosure proceeding brought against the plaintiffs did not misrepresent the character, extent, or amount of the consumer debt.  Here, the debt itself is in dispute, and on the face of the pleadings, the debt was invalid.  Neither *Miller* nor the language of section 392.304(a)(8) require that Molina have known about the proceeding

---

  [4]*See supra* note 1.

within any particular time frame.  Accordingly, Molina has pled a claim to relief under section 392.304(a)(8) that is plausible on its face.

### B. Violation of the FDCPA

The Caliber Defendants argue that they are not debt collectors under the FDCPA because "'[m]ortgage servicing companies' and 'debt assignees' are not debt collectors, and therefore are not regulated by the FDCPA, 'as long as the [mortgage] was not in default at the time it was assigned' by the originator." *Miller*, 726 F.3d at 722 (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).  However, a debt as defined under 15 U.S.C. § 1692a(5) means any obligation *or alleged obligation* of a consumer.  When the HSBC Defendants assigned the mortgage to the Caliber Defendants, Plaintiff's *alleged* obligation was in default at the time of transfer.  Thus, the Caliber Defendants meet the definition of a debt collector under the FDCPA.

*1. 15 U.S.C. § 1692d(5).* – This section prohibits debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5).  For the reasons set out in section III.A.4, *supra*, the Court holds that Molina has pled a claim to relief under section 1692d(5) that is plausible on its face.

*2. 15 U.S.C. § 1692e(2)(A).* – This section prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A). Molina alleges that in January 2014, the Caliber Defendants reported to the credit reporting agency that Plaintiff owed $125,735 when Molina actually owed nothing by way of the DIL.

*See* Am. Compl. 17 [16].  The Caliber Defendants argue that because Molina acknowledged that the Caliber Defendants reported the status of the account as "Creditor received deed," and does not allege that they reported the account as delinquent, the claim is not plausible. Because Molina alleges that the debt should have been extinguished, reporting that Molina owed $125,735 is a violation of section 1692e(2)(A).  Accordingly, Molina has pled a claim to relief under section1692e(2)(A) that is plausible on its face.

 *3.  15 U.S.C. § 1692e(8).* – This section prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  Molina alleges that Defendants reported to the credit reporting agency that Plaintiff owed $125,735 without communicating that the debt was in dispute.  The Caliber Defendants argue that Molina acknowledged that the Caliber Defendants reported the status of the account as "Creditor received deed," and does not allege that they reported the account as delinquent.  This is irrelevant to whether the Caliber Defendants failed to communicate that a disputed debt is disputed.  The Caliber Defendants also argue that Molina does not allege that the Caliber Defendants knew or should have known that any of the credit information it communicated was false.  Molina alleges that after the HSBC Defendants transferred the account to the Caliber Defendants in 2013, she "informed Caliber orally and in writing that she did not owe the debt."  Am. Compl. 7 [16].  The Caliber Defendants, at a minimum, should have known that the debt was

in dispute.  Accordingly, Molina has pled a claim to relief under section 1692e(8) that is plausible on its face.

**4. 15 U.S.C. § 1692e(10).** – This section prohibits debt collectors from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  Molina alleges that Caliber represented that she could raise money to pay the debt by performing a "short sale" of the property, which could have subjected her to criminal liability by requiring her to purport to transfer ownership of property that she did not own.  *See* Am. Compl. 17 [16]. The Caliber Defendants argue that "any alleged criminal liability is impossible where the alleged Property owner assisted with the allegedly prohibited sale."  Br. in Supp. of Defs.' Am. 12(c) Mot. for J. 14 [25].  While a short sale may have been improper, Molina fails to plead facts to show that the suggested short sale rose to the level of a false representation or deceptive means to collect the debt.  Accordingly, the Court dismisses Molina's claim under section 1692e(10).

**5. 15 U.S.C. § 1692f(1).** – This section prohibits debt collectors from "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Molina alleges that the Caliber Defendants attempted to collect on a debt that it knew the DIL had discharged; Molina references her correspondence with the Consumer Financial Protection Bureau ("CFPB") as evidence that the Caliber Defendants knew that the DIL was complete.  *See* Am. Compl. 17–18 [16].  The Caliber Defendants argue that there is no detail regarding the alleged conduct and that the

correspondence with the CFPB only shows that Caliber acknowledged the DIL was completed, not that they attempted to collect on the debt. While the Court agrees that the correspondence with the CFPB does not itself show that Caliber attempted to collect on the debt, Molina alleges numerous times throughout her complaint that the Caliber Defendants called her repeatedly to collect the debt, tried to convince her to perform a "short sale" of the Property to collect on the debt, threatened foreclosure proceedings, maintained a safeguard lock on the front door of the Property to prevent access until Molina paid the debt, and actually instituted foreclosure proceedings. Molina's correspondence with the CFPB is evidence that the Caliber Defendants were attempting to collect on an *extinguished* debt. Accordingly, Molina has pled a claim to relief under section 1692f(1) that is plausible on its face.

*6. 15 U.S.C. § 1692g(a)(1).* – This section requires that a debt collector, "within five days after the initial communication with a consumer in connection with the collection of any debt," send the consumer a written notice containing the amount of the debt. 15 U.S.C. § 1692g(a)(1). Molina pleads that the Caliber Defendants never actually sent Molina any evidence that she owed the debt at issue. *See* Am. Compl. 18 [16]. The Caliber Defendants argue that Molina does not show that she mailed a debt validation request within 30 days after their initial communication with Molina as contemplated by section 1692g(b). Section 1692(g)(a)(1) requires that a debt collector send a written notice containing the amount of the debt separate from the requirements of debt validation requests in section 1692g(b).

Accordingly, Molina has pled a claim to relief under section 1692g(a)(1) that is plausible on its face.[5]

### C. Violation of the DTPA

Molina brings her claims under the TDCA alternatively under the DTPA. Molina alleges that the Defendants engaged in a deceptive trade practice when they violated the Texas Finance Code as alleged in her TDCA claims. *See* Am. Compl. 15 [16]. The Caliber Defendants move to dismiss Molina's claims under the DTPA, arguing that Molina is not a consumer as contemplated by the DTPA. Because the Court agrees with the Caliber Defendants that Molina is not a consumer under the DTPA, the Court dismisses Molina's claims under the DTPA.

To prevail on a claim under the DTPA, Molina must establish that she is a consumer of a defendant's goods or services. *See, e.g., Perkins v. Bank of America*, 602 Fed.Appx. 178, 182 (5th Cir. 2015). A consumer under the DTPA "must seek or acquire goods or services by lease or purchase and the goods or services sought or acquired must form the basis of that person's complaint." *Id.* (internal quotation marks and punctuation omitted). Molina argues that because she pled that she borrowed funds to purchase the Property, thus seeking or acquiring goods, she was a consumer under the DTPA. Molina further argues that under Texas Business and Commercial Code § 17.50(h) she is a claimant who was granted

---

[5]However, to the extent Molina intended to bring a claim under 15 U.S.C. § 1692g(b), Molina does not show that she disputed the validity of the debt within thirty days after receipt of written notice of the debt. The Court dismisses any claim Molina attempts to bring under section 1692g(b).

the right to bring suit by another law, namely by Texas Finance Code § 392.404(a). As such, Molina argues that she is not required to meet the DTPA's definition of a consumer.

Generally, "since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA." *Gordon v. Bank of Am. Corp. & Green Tree Servicing, LLC*, 2015 WL 5872659, at *5 (N.D. Tex. 2015). Further, the Caliber Defendants argue that Molina did not borrow funds from Ameriquest in order to purchase the Property because Molina purchased the Property four years earlier in 2000.[6] Molina contends that it is plausible that she used the loan from Ameriquest to purchase the property from a previous lender who had acquired title to, or the right to sell, the Property. Even looking at the evidence in the light most favorable to Molina, Molina obtained a home equity loan, and as such does not qualify as a consumer under the DTPA. "[O]ne who obtains a home equity loan does not obtain a 'good' or a 'service' to qualify as a consumer under the DTPA." *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006).

Molina's attempt to bring a claim under the DTPA based on section 17.50(h) (the "tie-in statute") fails because a plaintiff must qualify as a consumer in order to sue under the tie-in statute. *See, e.g., Smith v. JPMorgan Chase Bank, N.A.*, 2014 WL 6790749, at *13 (N.D.

---

[6]Molina moves the Court to strike Defendants' Exhibits and reference to those exhibits [29] because the Caliber Defendants are attempting to introduce evidence outside of the pleadings. Additionally, Molina seeks leave to file a surreply [29]. Because any potential prejudice caused by Defendants' Exhibits is cured by allowing Molina leave to file her surreply, the Court denies the motion to strike and grants the motion for leave to file a surreply.

Tex. 2014) ("To succeed under such a tie-in claim, however, the claimant must show that he is a 'consumer' as defined in the DTPA.") (internal quotation marks and punctuation omitted). Accordingly, the Court dismisses Molina's claims under the DTPA.

### D. Violation of the TCPA

Molina additionally brings claims against the Caliber Defendants under the TCPA, alleging that the Defendants made numerous, nonemergency phone calls to her residential and cell phones starting after the parties executed and filed the DIL in 2010. Molina claims that the Caliber Defendants made these calls using an automatic telephone dialing system. Further, Molina alleges that she did not provide prior express consent for the Caliber Defendants to call her, and that the execution of the DIL or her cease and desist letter revoked any consent she may have given to receive calls from the HSBC Defendants. *See* Am. Compl. 19 [16].

The Caliber Defendants argue that the TCPA's prohibition against using an automatic telephone dialing system would not apply to Molina's residential phone line. They argue that the FCC has granted an exemption to the prohibition against calls using an artificial or prerecorded voice for debt collection calls to residences. The Caliber Defendants further argue that Molina in fact gave prior express consent to the Caliber Defendants to call her cell phone by providing her telephone numbers in connection with the loan.

The Court agrees with the Caliber Defendants that the TCPA's prohibition against using an automatic telephone dialing system would not apply to Molina's residential phone line. The FCC has clarified that "prerecorded debt collection calls are exempt from the

prohibitions on prerecorded calls to residences as commercial calls which do not transmit an unsolicited advertisement." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12399 (F.C.C. 1995) (internal quotation marks and punctuation omitted). Because Molina pleads that she did not provide prior express consent for the Caliber Defendants to call her, and because Molina pleads that she revoked any consent that she may have given to the HSBC Defendants before they transferred the account to the Caliber Defendants, the Court resolves any doubt in favor of Molina.

Accordingly, Molina has stated a claim for relief plausible on its face under the TCPA to the extent such claims are for calls made to Molina's cell phone using an automatic telephone dialing system.

### IV. THE COURT GRANTS THE HSBC DEFENDANTS' MOTION TO DISMISS IN PART

Upon review of the Amended Complaint and the relevant legal authorities, the Court determines that Molina has stated certain claims for relief under breach of contract, the TDCA, and the TCPA, but that Molina is not a consumer under the DTPA. Accordingly, the Court grants the HSBC Defendants' motion to dismiss in part and denies it in part.[7]

---

[7]Molina asks the Court to strike portions of the HSBC Defendant's motion to dismiss because the statements allegedly misstate Molina's allegations or theories. Federal Rule of Procedure 12(f) allows a court to strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. FED. R. CIV. P. 12(f). Courts disfavor Rule 12(f) motions and grant them only rarely. *See Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.,* 306 F.2d 862, 868 (5th Cir. 1962) (noting that a motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice" and "should be granted only when the pleading to be stricken has no possible relation to the controversy"); *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) ("Both because

### A. Breach of Contract Claim

Molina alleges that on or about February 11, 2010, she and the HSBC Defendants executed a valid and enforceable written contract (the DIL), providing that Molina would transfer all ownership interest in the Property to the HSBC Defendants and that the HSBC Defendants would in turn cancel and extinguish all debt owed to the HSBC Defendants by Molina pursuant to the promissory note. *See* Am. Compl. 10 [16]. The HSBC Defendants purportedly breached the contract when they indicated in their August 26, 2011 letter that Molina was contractually liable and owed the debt.[8] Molina claims both actual damage and mental anguish resulting from the breach of contract.

The HSBC Defendants claim that the four year statute of limitations bars the breach of contract claim. The statute of limitations is an affirmative defense. *See* FED. R. CIV. P. 8(c)(1). However, a "statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *accord Drake v. Fitzsimmons*, 2013 WL 775354, at *2 (N.D. Tex. 2013) ("Although defendants bear the burden of pleading and proving affirmative defenses, where facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b)(6) may

---

striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted."). Because the Court is able to adequately address these issues while ruling on the motion to dismiss, the Court denies Molina's motion to strike [31].

[8]*See supra* note 1.

be granted.")(quoting *Whiddon v. Chase Home Fin., LLC*, 666 F.Supp.2d 681, 686 (E.D. Tex. 2009)).  A breach of contract claim accrues when the contract is breached.  *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006).  The HSBC Defendants argue that any alleged breach would have occurred immediately after the parties executed the DIL in 2010 and the HSBC Defendants did not extinguish the debt.   Because a contract is breached by nonperformance and not by a statement inconsistent with performance, they argue, the Court should disregard any claim that their August 26, 2011 letter breached the contract.  Molina, however, argues that there was an agreement to extinguish the note, the note was extinguished, and that the parties were in the process of performing under the agreement before the HSBC Defendants repudiated the contract in their August 26, 2011 letter.  As evidence that the parties were in the process of performing under the contract, Molina notes that the HSBC Defendants took possession of the property, filed the DIL, sent Molina relocation funds, and requested cancellation of lender-placed insurance on the Property.  The Court does not find it evident from the face of the pleadings that Molina's breach of contract claim is time-barred.

Accordingly, Molina has stated a claim for breach of contract that is plausible on its face.

### B. Violation of the TDCA

**1. Section 392.301(a)(3). –** Molina pleads that by transferring the account to the Caliber Defendants for collections, the HSBC Defendants represented that the debt was undisputed and that Plaintiff was willfully refusing to pay it.  *See* Am. Compl. 11 [16].

ORDER – PAGE 21

Because transferring the loan to the Caliber Defendants does not support the conclusion that the HSBC Defendants represented that Molina was willfully refusing to pay the debt, the Court dismisses Molina's claim under section 392.301(a)(3) of the TDCA.

*2. Section 392.301(a)(7).* – On or about March 5, 2010, the HSBC Defendants allegedly took possession of the Property, placed a safeguard lock on the front door, and began monitoring access to the Property. Molina argues that these actions constituted a seizure, repossession, or sale of the Property without proper court proceedings in violation of section 392.301(a)(7). Because Molina pleads the DIL was valid and that the debt should have been extinguished, the HSBC Defendants taking possession of the Property and placing safeguard locks on the front door would be consistent with a transfer of ownership. Accordingly, the Court dismisses Molina's section 392.301(a)(7) claim.

*3. Section 392.301(a)(8).* – Molina alleges that the HSBC Defendants threatened to take an action prohibited by law when they threatened to foreclose on the Property after the DIL had already transferred ownership of the Property to the HSBC Defendants. The HSBC Defendants argue that Molina does not show that the law prohibits foreclosure of the Property. Further, the HSBC Defendants argue that any such representations took place shortly after the signing of the DIL in 2010, which makes the claim time-barred by the two-year statute of limitations for TDCA claims.

For the reasons set forth in section III.A.3, *supra*, threatening to foreclose on the Property after the parties purportedly executed the DIL is an action prohibited by law. Further, it is not clear on the face of the complaint that these threats took place only shortly

after the parties executed the DIL.  Thus, the statute of limitations does not bar this claim.

Accordingly, Molina has stated a claim under section 392.301(a)(8) that is plausible on its

face.

 *4. Section 392.302(4).* – Molina pleads that Defendants made one or more debt

collection calls per day several times per month, and that per information and belief, the

HSBC Defendants made these calls with the intent to harass her into paying the debt.  *See*

Am. Compl. 13 [16].  The HSBC Defendants argue that Molina did not plead that the HSBC

Defendants made any phone calls to Plaintiff after, at the latest, August 2011, and therefore

a claim against the HSBC Defendants is time-barred.  Further, the HSBC Defendants state

that Molina has not alleged any specifics regarding the date, time, or frequency of the calls.

 Molina pleads that the HSBC Defendants made repeated telephone calls with the

intent to harass her.  Per Rule 9(b) of the Federal Rules of Civil Procedure, Molina need only

allege this intent generally.  *See* FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally.")

 Additionally, Molina alleges that she received "one or more debt collection calls per

day several times per month" made during the period "after the DIL was executed and filed

and before this action was filed."  Am. Compl. 13 [16].  Molina also states that the HSBC

Defendants "were responsible for actions complained of in or before 2013," while the Caliber

Defendants "were responsible for actions in or after 2013."  Am. Compl. 4 [16].  Although

Molina also pleads that the HSBC Defendants said in their correspondence to her dated

August 26, 2011 that they updated their records to communicate with her via mail rather than

by phone, Molina does not plead that the calls actually ceased.  Because Molina is silent in her complaint about the date when the calls from the HSBC Defendants ceased, it is not evident on the face of the pleadings that Molina's complaint is time-barred.  Accordingly, applying the two-year statute of limitations[9], Molina has stated a claim that is plausible on its face for violations of section 392.302(4) made after January 16, 2013.

     *5. Section 392.303(a)(2).* –  Molina alleges that the HSBC Defendants attempted to collect $141,212.73 from her on December 12, 2012 for interests that the HSBC Defendants were purportedly not entitled to charge because the note had been extinguished.  *See* Am. Compl. 13 [16].  Applying the two-year statute of limitations, on the face of the complaint this claim is time barred.  Accordingly, the Court dismisses Molina's section 392.303(a)(2) claim against the HSBC Defendants.

     *6. Section 392.304(a)(8).* –  Molina alleges that on April 5, 2013, the HSBC Defendants sent her a Notice of Default and Intent to Accelerate her Texas Nonrecourse Loan, which indicated that $62,283.47 was past due.  Because Molina does not plead that the HSBC Defendants made this statement in a judicial or government proceeding, the Court dismisses Molina's claim against the HSBC Defendants under section 392.304(a)(8) of the TDCA.

---

    [9]"The statute of limitations for a [TDCA] claim is two years."  *Williams v. Chase Home Finance, LLC*, 2014 WL 46233, at *4 (N.D. Tex. 2014).

ORDER – PAGE 24

### C. Violation of the DTPA

For the reasons set forth by the Court in section III.C, *supra*, Molina is not a consumer under the DTPA, nor can she bring her claims under the tie-in statute without qualifying as a consumer. Accordingly, the Court dismisses Molina's claims against the HSBC Defendants under the DTPA.

### D. Violation of the TCPA

Molina brings claims against the HSBC Defendants under the TCPA, alleging that the Defendants made numerous, nonemergency phone calls to her residential and cell phones using an automatic telephone dialing system starting after the parties executed and filed the DIL in 2010. Further, Molina alleges that she revoked any consent she may have given to receive calls from the HSBC Defendants through the execution of the DIL or through her cease and desist letter. *See* Am. Compl. 19 [16]. The HSBC Defendants move to dismiss Molina's TCPA claims, arguing that the complaint does not allege that the HSBC Defendants made any calls to Molina after informing her that its records had been updated to cease all phone communication in August 2011, and that the two-year statute of limitation bars Molina's TCPA claims. Molina argues that the applicable statute of limitations is four years. The Court agrees with Molina that the relevant statute of limitations is four years[10]. Further, Molina pleads that the HSBC Defendants made repeated telephone calls with the intent to

---

[10]*See Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) ("Given the liberal interpretation we are required to give section 1658(a) . . . we conclude that section 227(b)(3)'s 'if otherwise permitted' language does not operate as an exception to the generally applicable federal catch-all limitations period in 28 U.S.C. § 1658(a). That statute's four-year limitations period therefore governs [Plaintiff's TCPA claim].").

harass her. Per Rule 9(b) of the Federal Rules of Civil Procedure, Molina need only allege this intent generally. *See* FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") Thus, the Court holds that Molina has stated a claim for relief under the TCPA that is plausible on its face to the extent such claims are for calls made after January 16, 2011 to Molina's cell phone using an automatic telephone dialing system.

## V. THE COURT DENIES LEAVE TO AMEND

To the extent the Court grants the Caliber Defendants motion for judgment on the pleadings or the HSBC Defendants motion to dismiss, Molina asks the Court to grant leave for Molina to amend her complaint. Molina filed an Amended Complaint as a matter of course pursuant to Rule 15(a)(1)(B) with this Court on April 7, 2015. The Court allowed Molina to file a second Amended Complaint on March 15, 2016. In that Order, the Court noted that it "will . . . look with disfavor upon any future requests for leave to amend in response to any dispositive motions. At this point, Plaintiff has had ample opportunity to flesh out her pleadings, particularly with having had the benefit of the defendants' previous motions." Order March 15, 2016 12 [23]. Because Molina has had plentiful opportunity to state her best case,[11] the Court denies Molina leave to further amend her complaint.

---

[11]*See, e.g., St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009).

CONCLUSION

The Court grants in part and denies in part the Caliber Defendants' 12(c) motion for judgment on the pleadings. The Court grants in part and denies in part the HSBC Defendants' motion to dismiss. The Court denies Molina leave to amend.

Signed December 8, 2016.

David C. Godbey
United States District Judge